UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TREISTON MICHEL PIERRON                        CIVIL ACTION

VERSUS                                         NUMBER: 16-01746

L.P.D.C., ET AL.                               SECTION: "H"(5)

## REPORT AND RECOMMENDATION

This 42 U.S.C. §1983 proceeding was filed *in forma pauperis* by *pro se* Plaintiff, Treiston Michel Pierron, against Defendants, the Lafourche Parish Detention Center ("LPDC"); Lieutenant Jessica Bordelon, Assistant Warden of LPDC; Deputy Charles Newton; Deputy Caleb Lymose; Deputy Robert Marulli; and Lieutenant Robin Naquin. (Rec. docs. 4, pp. 1, 2; 44-1, pp. 1, 2).

Plaintiff is an inmate of the Caldwell Correctional Center in Grayson, Louisiana, who was at one time confined at LPDC in Thibodaux, Louisiana. While so confined at LPDC, Plaintiff alleges that he was subjected to various conditions and incidents that will be described more fully below. (Rec. doc. 4-1, p. 5).

Plaintiff first alleges that on December 26, 2015, he was placed in a segregation cell that had no running water in the sink and was thus without drinking water for "over 24 hours." (Rec. doc. 4-1, p. 5). Subsequently, Plaintiff explains, he "almost" got in a physical confrontation with correctional officers over the issue. (*Id.*). Next, Plaintiff alleges that on January 9, 2016 at 2200 hours, the "cops" took a water jug that Plaintiff possessed in his cell and advised him that he could get water again in the morning. (*Id.*). Driven by thirst, Plaintiff states that he consumed a cup of water from the toilet in his cell. (*Id.*). Plaintiff also states that he was housed in a cell with an inmate who suffered from AIDS and that he became sick

with an unspecified illness for which he was not provided medical attention or seen by a nurse, only being given Tylenol and Mucinex to alleviate his symptoms. (*Id.*). In his prayer for relief, Plaintiff requests various forms of injunctive relief, including the demotion and suspension of certain of the Defendants, as well as $3,500,000 in damages. (*Id.*).

On June 2, 2016, without formally moving the Court to amend his complaint, Plaintiff submitted a filing denominated "evidence to support my case" in which he complains of various other occurrences that allegedly transpired during the course of his stay at LPDC. (Rec. doc. 18). After professing his innocence of the charges for which he was being held,[1] Plaintiff states that some time in January of 2016 he became involved in a relationship with a female correctional officer at LPDC named Lorrie Fields. After being temporarily transferred to a work release facility, Plaintiff alleges that Lieutenant Bordelon and one Major Brinkley called that facility after learning of Plaintiff's dalliance with Fields. (*Id.* at pp. 1-2). Officials at that other facility, in turn, became "upset" with Plaintiff over his phone calls and correspondence with Fields, and he was at some point pepper-sprayed, beaten, and put in the "hole" over an incident involving a cell phone that he did possess. (*Id.* at p. 2). Plaintiff explains that it was the warden of the other facility who sprayed him but that he is unaware of the identity of the individual who struck him. (*Id.*). One week later, Plaintiff was released from the "hole" only to discover that Fields had been fired or forced to resign from her position at LPDC. (*Id.*).

---

[1] The Court has since learned that on July 9, 2016, Plaintiff pled guilty to four counts of arson, one of which involved a fire that he set at LPDC while he was incarcerated there, for which he was sentenced to four concurrent jail terms of 10 years. *See* http://www.tlgnewspaper.com/raceland-man-pleads-guilty-to-four-arson-charges.

After being transferred back to LPDC in connection with his then-ongoing state-court criminal proceedings, Plaintiff alleges that on April 26, 2016, "officers" confiscated his photographs of Fields along with legal documents that were needed in connection with his ongoing criminal proceedings. (*Id.*). Plaintiff then goes on to relate a number of discrete incidents that allegedly took place at LPDC over the month that followed including: 1) another inmate's placement in the segregation cell which lacked running water, the questioning of that inmate by Bordelon regarding the relationship between Plaintiff and Fields and the purported monitoring of Plaintiff's phone calls with Fields; 2) Plaintiff's inability to attend religious services; 3) Officer Vera's "making fun" of Plaintiff by asking him if he had clean water; 4) an incident in which one inmate struck another in the face in front of a correctional officer but was not charged in connection with the altercation; 5) Deputy Newton calling Plaintiff a "hoe" on one occasion; and 6) the non-responsiveness of LPDC officials to Plaintiff's inquiries as to when he would be transferred to a different jail facility. (*Id.* at pp. 2-3).

As noted above, Plaintiff has initiated this suit *in forma pauperis* ("IFP") pursuant to 28 U.S.C. §1915. (Rec. doc. 4). A proceeding brought IFP may be dismissed as frivolous under §1915(e)(2)(B)(i) if the claim alleged therein has no arguable basis in law or fact, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993), or if it fails to state a claim upon which relief can be granted. 28 U.S.C. §1915(e)(2)(B)(ii); *see also* 28 U.S.C. §1915A(b), 42 U.S.C. §1997e(c). Giving the instant complaint a liberal reading, it is the recommendation of the undersigned Magistrate Judge that this matter be dismissed as frivolous and for failing to state a claim upon which relief can be granted.

The first Defendant identified by Plaintiff in this proceeding is LPDC. As to it, the law is well-settled that in order to set forth a cognizable claim under §1983, an aggrieved party must allege that the defendant, a "person" acting under color of state law and in accordance with an established state procedure, deprived him of the rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664 (1986). Correctional facilities like LPDC, however, are not considered to be "persons" within the meaning of §1983 as it is a building and not an entity or person who is capable of being sued as such. *Wetzel v. St. Tammany Parish Jail*, 610 F.Supp.2d 545, 548 (E.D. La. 2009); *Jones v. St. Tammany Parish Jail*, 4 F.Supp. 2d 606, 613 (5th Cir. 1998). Because LPDC is not an appropriate juridical entity against whom judgment may properly be entered, Plaintiff's §1983 claim as to it should be dismissed as frivolous and for failure to state a claim upon which relief can be granted.

Turning now to the five individually named Defendants, Plaintiff gives no indication in his complaint of the capacity(ies) in which said Defendants are being sued. In that regard, "[w]hen a pro se plaintiff does not specify in his complaint whether a defendant is named in his or her official or individual capacity, it is generally presumed by operation of law that the defendant is named in his or her official capacity." *Douglas v. Gusman*, 567 F.Supp. 2d 877, 888-89 (E.D. La. 2008). "'In a suit brought against a municipal official in his [or her] official capacity, the plaintiff must show that the municipality has a policy or custom that caused his injury.'" *Carter v. Strain*, No. 09-CV-0015, 2009 WL 3231826 at *2 (E.D. La. Oct. 1, 2009)(quoting *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied*, 555 U.S. 813, 129 S.Ct. 42 (2008)). "'A plaintiff may not infer a policy merely because harm resulted from

4

some interaction with a governmental entity.'" *Id.* (quoting *Colle v. Brazos County, Texas*, 982 F.2d 237, 245 (5th Cir. 1993)). Rather, the plaintiff ". . . must <u>identify</u> the policy or custom which allegedly caused the deprivation of his constitutional rights." *Id.* (citing *Murray v. Town of Mansura*, 76 Fed.Appx. 547, 549 (5th Cir. 2003) and *Treece v. Louisiana*, 74 Fed.Appx. 315, 316 (5th Cir. 2003)).

Measured against the foregoing standards, Plaintiff's allegations against the Defendants in their official capacity fail to state a claim upon which relief can be granted, as he does not allege that the purported deprivations resulted from a policy or custom, much less identify any such policy or custom. *Carter*, 2009 WL 3231826 at *2. Viewing Plaintiff's allegations against the five Defendants in their individual capacity, he fares no better because, with only limited exceptions, he does not specifically attribute the incidents of which he complains to one or more of the named Defendants. To establish liability on the part of a municipal official in his or her individual capacity, a plaintiff must enunciate a set of facts that illustrates each of the defendant's participation in the alleged wrongs. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). This is so because personal involvement is an essential element of a civil rights cause of action, *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), and a plaintiff must allege specific facts and conduct which give rise to the constitutional claims. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002). Supervisory officials like the Assistant Warden of LPDC "… cannot be held liable for federal civil rights violations allegedly committed by … [her] associates based merely on a theory of strict liability or vicarious liability." *Carter*, 2009 WL 3231826 at *1 (footnotes omitted).

Notwithstanding the sparsity of Plaintiff's allegations respecting the personal involvement of each of the named Defendants, Plaintiff has insufficiently pled conditions-of-confinement claims against them for the following reasons.

The Constitution does not require that inmates be housed in comfortable prisons, only that they be afforded humane conditions of confinement and reasonably adequate food, shelter, clothing, and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001)(citing *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994)). In order to establish a constitutional violation as a result of inadequate conditions of confinement,[2] an inmate must demonstrate, first, that he was deprived of the minimal civilized measure of life's necessities or some basic human need and, second, that prison officials acted out of deliberate indifference to the inmate's health or safety. *Id. See also Taylor v. Woods*, 211 Fed.Appx. 240, 241 (5th Cir. 2006); *Pittman v. Allison*, No. 08-CV-0328, 2010 WL 2736961 at *3 (S.D. Miss. July 9, 2010). "Deliberate indifference is established by showing that the defendant officials '(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.'" *Herman*, 238 F.3d at 664 (quoting *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)). "'Deliberate indifference' is a stringent standard of fault, one which requires proof that a municipal actor disregarded a known or obvious consequence of his action." *Ford v. Gusman*, No. 11-CV-2950, 2012 WL 2567063 at *8 (E.D. La. May 11, 2012), *adopted*, 2012 WL 2567034 (E.D. La. July 2, 2012)(citing *Board of the*

---

[2] Regardless whether Plaintiff was a pre-trial detainee or a convicted prisoner at the time of the occurrences of which he complains herein, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. *Olabisimotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999); *Hamilton v. Lyons*, 74 F.3d 99, 104 n. 3 (5th Cir. 1996); *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996).

6

*County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391 (1997)). It has been equated with a "subjective recklessness" as that term is used in criminal law. *Norton v. Dimazana*, 122 F.3d 286 291 (5th Cir. 1997).

      The allegations made by Plaintiff fall far short of establishing the objective and subjective components of deliberate indifference that are needed to prevail on a conditions-of-confinement claim. Plaintiff first alleges that he was housed in a cell that had no running water in the sink for "over 24 hours." From an objective standpoint, that circumstance, while admittedly less than optimal and unpleasant, fails to rise to the level of a constitutional violation. *Desroche v. Strain*, 507 F.Supp.2d 571, 580 (E.D. La. 2007)(Feldman, J.), *appeal dis'd*, 291 Fed.Appx. 569 (5th Cir. 2008)(citing *Seltzer-Bey v. Delo*, 66 F.3d 961, 964 (8th Cir. 1995)(placement in strip cell without clothes, running water, mattress, or blanket for two days was not unconstitutional where there was no evidence that inmate suffered any injury or adverse health consequences or that jail officials knew of and disregarded an excessive risk to his health and safety) and *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995)(placement in strip cell without clothes, running water, mattress, pillow, or blanket for four days, where plaintiff sought no treatment for any resulting medical condition or injury, was not unconstitutional)). From a subjective standpoint, Plaintiff does not specifically attribute his placement in the segregation cell to any of the named Defendants, *Lawson v. Stevens*, 62 F.3d 394, 1995 WL 450100 at *1 (5th Cir. 1995), nor does he allege that any of the Defendants were even aware that there had been an interruption in the supply of water to that cell. That being the case, deliberate indifference is not established here. Next, Plaintiff complains that on January 9, 2016 at 10:00 p.m., the "cops" removed his water jug from his cell until the following morning, as a reported consequence of which he states that he voluntarily

7

consumed a cup of water from the toilet in his cell.  In light of the authorities cited above, Plaintiff's lack of water during the overnight hours of January 9, 2016 is not objectively serious enough to rise to the level of a constitutional violation and he does not identify the official(s) who were responsible for that brief cessation, much less establish his/her/their awareness that an excessive risk of harm would result.  In any event, the Defendants cannot be held liable for acts that Plaintiff undertakes of his own volition.

Plaintiff next complains that he was housed, for an unspecified time, in a cell with another inmate who suffered from AIDS.  Once again, Plaintiff does not identify the official(s) who was responsible for his housing assignment nor does he allege that such official(s) was aware of an excessive risk of harm to Plaintiff.  Those omissions notwithstanding, the Defendants were under no constitutional duty to segregate those inmates with AIDS from inmates who were not so infected.  *Oladipupo v. Austin*, 104 F.Supp.2d 626, 635 (W.D. La. 2000); *Grice v. Blanco*, No. 07-CV-0617, 2007 WL 2908826 at *9-10 (W.D. La. Jul. 18, 2007).  And although Plaintiff claims that he became "sick," without some indication of the malady from which he supposedly suffered, the Court is unable to characterize it as a serious medical condition for constitutional purposes.  *See Desroche*, 507 F.Supp.2d at 581-83 (Constitution proscribes only deliberate indifference to a <u>serious</u> medical need).  In response to his unspecified malady, Plaintiff admits that he was provided with over-the-counter medications to alleviate his symptoms. He also attaches to his complaint a copy of a "Request for Medical Services" form in which he explained that "[t]he medicine im getting is not good. I would like something else please and actually get to see a doctor."  (Rec. doc. 4-1, p. 10).  It thus appears that Plaintiff's complaint centers on his disagreement with the medical attention that he was in fact provided.  *Id.*

8

In his supplemental filing (rec. doc. 18), Plaintiff additionally complains of instances of mistreatment at a separate work-release facility after word of his relationship with the female LPDC correctional officer apparently made its way there.  As best as the Court can determine, none of the officials affiliated with that other work-release facility are named as Defendants in this proceeding and there is thus no basis upon which to hold them liable here. After being transferred back to LPDC, Plaintiff alleges that unidentified officials took his photographs of the female correctional officer along with unspecified legal papers.  Putting aside the fact that Plaintiff does not specifically identify the seizing official(s), deprivation of property by a state actor, whether done negligently, *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330, 106 S.Ct. 662, 664 (1986), or intentionally, *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3104 (1984), is not actionable under §1983 when an adequate state-law remedy exists.  *See also Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994); *Hines v. Booth*, 841 F.2d 623, 624 (5th Cir. 1988). Louisiana law provides such a remedy.  *See* LSA-C.C. Art. 2315.  With respect to the reported confiscation of Plaintiff's legal papers, as he makes no showing that his position as a litigant was prejudiced in any way, he has no §1983 cause of action.  *Whiting v. Kelly*, 255 Fed.Appx. 896, 898-99 (5th Cir. 2007); *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir. 1993).

Next, Plaintiff complains that another inmate was subsequently housed in the segregation cell that lacked running water, that said inmate was questioned by Lieutenant Bordelon about Plaintiff's relationship with Fields, and that Plaintiff's phone calls with Fields may have been monitored.  The short answer to these allegations is that Plaintiff lacks standing to assert the rights of other inmates, *Patin v. LeBlanc*, No. 11-CV-3071, 2012 WL 3109402 at *7-8 (E.D. La. May 18, 2012), *adopted*, 2012 WL 3109398 (E.D. La. Jul. 31, 2012);

prisoners retain, at best, only minimal privacy rights, *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); the Court is aware of no constitutional prohibition on the mere questioning of prisoners by jailers; and the routine practice of monitoring and even recording inmates' phone calls easily passes constitutional muster. *See, e.g.*, *Waganfeald v. Gusman*, 674 F.3d 475, 484-85 (5th Cir.), *cert. denied*, __ U.S. __, 133 S.Ct. 328 (2012).

Citing a specific date of May 12, 2016 and a time of 1930 hours, Plaintiff next complains that he filled out forms to obtain approval to attend church "… but yet I don't get to go." (Rec. doc. 18, p. 3). Just as was the case with his other allegations, Plaintiff does not attribute his inability to attend religious services to any particular Defendant nor does he allege that the failure was intentional as opposed to being merely negligent. Plaintiff also does not allege that his consistent attendance at formal religious services is a fundamental tenet of his faith (which Plaintiff does not even identify). *See, e.g.*, *Diaz v. Collins*, 114 F.3d 69, 72 (5th Cir. 1997). Notably, Plaintiff makes no allegation that he was prohibited from practicing his religion on his own or from possessing written or other religious materials for that purpose. *Sanders v. Ennis-Bullock*, 316 Fed.Appx. 610, 611-12 (9th Cir. 2009); *Gordon v. Lee*, No. 10-CV-1904, 2011 WL 6157261 at *4 (W.D. La. May 17, 2011); *Gabriel v. Gusman*, No. 10-CV-1688, 2010 WL 3169840 at *7 (E.D. La. Jul. 16, 2010), *adopted*, 2010 WL 3175045 (E.D. La. Aug. 10, 2010), *Smith v. Frank*, No. 07-CV-0083, 2009 WL 750272 at *7 (E.D. Wis. Mar. 20, 2009). In light of these authorities, any First Amendment claim raised by Plaintiff's complaint should be dismissed as frivolous and for failure to state a claim upon which relief can be granted.

Of the remaining incidents cited by Plaintiff, two share a common feature. On May 16, 2016, Plaintiff complains that Officer Nicholas Vera ridiculed him by asking him if he had

clean water. Subsequently, on May 24, 2016, Plaintiff alleges that Deputy Newton approached his cell and called him a "hoe." As to these allegations, the law is clear that mere verbal abuse or threatening language and gestures of a correctional officer do not, even if true, amount to constitutional violations. *Harvey v. Stalder*, 130 Fed.Appx. 654 (5th Cir. 2005); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir.), *cert. denied*, 464 U.S. 998, 104 S.Ct. 499 (1983). Plaintiff also cites an incident that allegedly occurred on May 22, 2016 in which one inmate struck another in the presence of an officer but the former was not charged in connection with the altercation. Unfortunately for Plaintiff, "[a] failure-to-protect claim that fails to allege any resulting physical injury does not state a[] [constitutional] violation entitling a prisoner to compensatory damages." *Winding v. Sparkman*, 423 Fed.Appx. 473, 474 (5th Cir. 2011)(citing *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) and 42 U.S.C. §1997e(e)).

Finally, Plaintiff expresses dissatisfaction with the manner in which his request to be transferred to a different prison facility was addressed by LPDC officials, speculating that the pendency of this lawsuit was the impetus behind the response that he received. Plaintiff attaches to his supplemental filing a copy of an LPDC "Inmate Request" form in which, on May 16, 2016, he asked for "… a reasonable explanation to y im not being ship[p]ed?" (Rec. doc. 18, p. 4). That form was received by LPDC official P. Bonnette on that same date and was responded to by Captain C. Davis on May 18, 2016, neither of whom is named as a defendant in this proceeding. In the response, Captain Davis explained that "[t]he desire to be shipped does not rely on the desires of an inmate its at the discretion of jail personnel. You can not request to be shipped." (*Id.*). On that score, the responding official was imminently correct as inmates have no constitutional right to be imprisoned in one

11

particular correctional facility as opposed to another, *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir. 1989), nor do they have a constitutional right to be transferred to a different jail facility. *Biliski v. Harbourth*, 55 F.2d 160, 162 (5th Cir. 1995). Plaintiff has, in any event, been transferred from LPDC since the time that he signed his complaint, thus rendering his request for injunctive relief moot. *Burge v. Dunn*, 68 F.3d 465 (5th Cir. 1995)(citing *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990)). And without a showing of physical injury, damages for mental or emotional injury suffered while in custody are not recoverable under §1983. 42 U.S.C. §1997e(e); *Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir. 2001).

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's suit be dismissed with prejudice under 28 U.S.C. §1915(e)(2)(B)(i) and (ii).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996)(en banc).3/

---

3/ *Douglass* referenced the previously-applicable 10-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.

New Orleans, Louisiana, this __9th__ day of _____February_____, 2017.

                                                        MICHAEL B. NORTH
                                     UNITED STATES MAGISTRATE JUDGE

13